IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| Plaintiff, | ) ) ) | 1:19 CR 369 |
| v. | ) ) | CASE NO. _____ |
| ANTHONY ZANGARE, JR., | ) ) ) | Title 18, United States Code, Section 1343 |
| Defendant. | ) ) | JUDGE POLSTER |

The Grand Jury charges:

## GENERAL ALLEGATIONS

1. At all times material to this Indictment, Professional Electric Products Company (hereinafter "Pepco") was a business entity operating in the State of Ohio and elsewhere providing electrical supply distribution to its customers.

2. At all times material to this Indictment, Citizens Financial Group Incorporated (hereinafter "Citizens Bank") was a financial institution utilized by Pepco. The Citizens Bank server for processing Pepco's payments was located in the State of Rhode Island and all charges instituted online that are the subject of this Indictment electronically crossed state lines to effectuate purchases.

3. At all times material to this Indictment, FirstEnergy Corporation (hereinafter "FirstEnergy") was an electric utility company operating in the State of Ohio and elsewhere.

4. At all times material to this Indictment, JPMorgan Chase & Co. (hereinafter "Chase Bank"), was a financial institution headquartered in the State of New York.

5.  At all times material to this Indictment, FirstEnergy employees and contractors on behalf of FirstEnergy, requested electrical supplies and tools from Pepco. Pepco submitted a purchase quote to FirstEnergy. FirstEnergy, utilized Chase Bank and submitted payment to Citizens Bank, on behalf of Pepco.

6.  At all times material to this Indictment, Burns & McDonnell was a business entity headquartered in Kansas City, Missouri, that provided skilled laborers to various entities involved in construction and engineering. FirstEnergy utilized Burns & McDonnell employees for projects in the Northern District of Ohio, Eastern Division.

7.  At all times material to this Indictment, FirstEnergy had a service agreement with Pepco to obtain supplies for FirstEnergy projects. Burns & McDonnell employees, acted on behalf of FirstEnergy, and secured materials from Pepco for projects by completing a design package and sending a bill of material to Pepco. A standard 20% margin was added to most orders with Pepco to allow for insufficient quantities of materials on the original purchase order.

## THE SCHEME

8.  It was part of the scheme that from at least June 1, 2018 through November 16, 2018, Defendant ANTHONY ZANGARE, JR. (hereinafter "Defendant"), utilized his employment with Burns & McDonnell to fraudulently acquire copper from Pepco and sell it at various scrap yards in the Northern District of Ohio.

9.  It was further part of the scheme that Defendant was a site coordinator for Burns & McDonnell and was contracted to work on FirstEnergy projects. Defendant had the ability to order and pick up electrical supplies from Pepco on behalf of FirstEnergy. Defendant typically called Pepco to request material. Defendant could order extra materials that he deemed necessary for the FirstEnergy project. Although these requests required FirstEnergy's approval, the volume and the frequency of such requests rendered the process perfunctory. This enabled

2

Defendant to order extra copper, specifically 100 foot coils of 4/0 bare copper, to sell to scrapyards. If the requested materials cost less than the original purchase order, including the additional 20% margin, the order could be processed by Pepco without a change of order. If there was not sufficient funds on the purchase order, a Pepco representative contacted a FirstEnergy buyer to increase the funding level of the purchase order by creating a change order.

10. It was further part of the scheme that Defendant personally picked up the copper that he did not intend to use on FirstEnergy projects once the order was processed. The amount and type of copper ordered by Defendant was inconsistent with projects performed on behalf of FirstEnergy. The amount and type of copper, however, was consistent with material that was easily transported by a single individual and easily scrapped. Pepco obtained most shipments of 4/0 bare copper from Texas, West Virginia, and other places outside of the State of Ohio. After picking up the copper, Defendant drove to scrapyards in the Northern District of Ohio to sell the copper. In total, Defendant acquired approximately 129,400 feet of 4/0 bare copper that weighed approximately 84,500 pounds that he did not intend to use on FirstEnergy projects.

11. It was further part of the scheme that Defendant transmitted and caused to be transmitted approximately 51 wire transfers of funds from FirstEnergy's bank, Chase Bank, located in New York to Pepco's bank, Citizens Bank, located in Rhode Island, totaling approximately $337,000.00 in loss to pay for copper fraudulently obtained and which Defendant subsequently sold for his own benefit.

COUNTS 1-10
(Wire Fraud, 18 U.S.C. § 1343)

The Grand Jury further charges:

12. The factual allegations contained in paragraphs 1 through 11 are re-alleged and incorporated by reference as if fully set forth herein.

13. From on or about June 1, 2018 and continuing to on or about November 16, 2018, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ANTHONY ZANGARE, JR., knowingly devised and intended to devise a scheme and artifice to defraud FirstEnergy, and others, and to obtain monies and property by means of false and fraudulent pretenses, representations and promises. For the purpose of executing the scheme and artifice to defraud, Defendant transmitted and caused to be transmitted, by means of wire communications in interstate or foreign commerce, writings, signs, and signals in the form of funds transfers that were initiated online by Pepco in Ohio and elsewhere, in exchange for merchandise, all in violation of Title 18, United States Code, Section 1343.

14. On or about each of the dates below, for purpose of executing the scheme described above, Defendant transmitted and caused to be transmitted certain wire communication in interstate commerce, each communication constituting a separate count of this indictment:

| Count | Date | Type and Quantity of Copper | From: | To: | Approximate Loss |
|---|---|---|---|---|---|
| 1 | 11/15/18 | 4/0 bare copper coils<br>3,400 feet<br>Approximately 2,216 pounds | NY | RI | $8,613.33 |
| 2 | 10/30/18 | 4/0 bare copper coils<br>3,000 feet<br>Approximately 1,956 pounds | NY | RI | $8,396.67 |
| 3 | 10/24/18 | 4/0 bare copper coils<br>3,200 feet<br>Approximately 2,086 pounds | NY | RI | $7,944.51 |
| 4 | 10/23/18 | 4/0 bare copper coils<br>3,200 feet<br>Approximately 2,086 pounds | NY | RI | $7,944.54 |
| 5 | 10/16/18 | 4/0 bare copper coils<br>3,200 feet<br>Approximately 2,086 pounds | NY | RI | $7,944.54 |
| 6 | 10/04/18 | 4/0 bare copper coils<br>3,000 feet<br>Approximately 1,956 pounds | NY | RI | $8,228.74 |

| | | | | | |
|---|---|---|---|---|---|
| 7 | 9/18/18 | 4/0 bare copper coils<br>3,000 feet<br>Approximately 1,956 pounds | NY | RI | $7,836.74 |
| 8 | 9/17/18 | 4/0 bare copper coils<br>3,000 feet<br>Approximately 1,956 pounds | NY | RI | $8,228.74 |
| 9 | 8/13/18 | 4/0 bare copper coils<br>2,800 feet<br>Approximately 1,825 pounds | NY | RI | $7,836.89 |
| 10 | 7/17/18 | 4/0 bare copper coils<br>2,800 feet<br>Approximately 1,825 pounds | NY | RI | $7,836.89 |

All in violation of Title 18, United States Code, Section 1343.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.